# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## VICTORIA DIVISION

United States Courts
Southern District of Texas
F I L E D

**APR 0 3 2026**

Nathan Ochsner
~~Clerk of Court~~

---

**NARVEEN SINGH ARYAPUTRI,**

    Plaintiff,

v.

**GOOGLE LLC, d/b/a YOUTUBE,**

    Defendant.

---

Civil Action No.: 6:26-CV 00007

## COMPLAINT AND JURY DEMAND

## I. INTRODUCTION

1. This case arises from the removal of Plaintiff's YouTube channel, which was dedicated exclusively to lawful cultural and religious musical expression — specifically, Sikh kirtan performed in the Indian classical raag tradition.

2. Defendant Google LLC, through its YouTube platform, removed Plaintiff's channel after classifying its content under policies associated with violent extremist or criminal organizations.

3. This classification is false and stigmatizing.

4. Plaintiff's content consists solely of devotional music and contains no violent, extremist, or criminal advocacy of any kind.

5. As a result of Defendant's actions, Plaintiff suffered reputational harm, loss of approximately two years of work, and substantial economic damages.

## II. JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship), as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.  Plaintiff is an individual residing in Victoria County, Texas.

8.  Defendant Google LLC is a corporation organized under the laws of Delaware, with its principal place of business in Mountain View, California.

9.  The amount in controversy exceeds $325,000.

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred within this District.

## III. PARTIES

11. Plaintiff Narveen Singh Aryaputri is an individual residing in Victoria County, Texas.

12. Defendant Google LLC is a Delaware limited liability company that operates the YouTube platform, a publicly accessible video-sharing and channel-hosting service available at www.youtube.com.

## IV. FACTUAL ALLEGATIONS

### A. Nature of Plaintiff's Work

13. Plaintiff operated a YouTube channel dedicated exclusively to Sikh kirtan, a tradition of devotional music central to Sikh religious practice.

14. The content consisted of classical raag-based performances by identifiable artists within the Sikh devotional tradition.

15. The content contained no violent, extremist, or unlawful material of any kind.

### B. Defendant's Classification and Channel Removal

16. On or about November 5, 2025, Defendant removed Plaintiff's YouTube channel in its entirety.

17. In connection with that removal, Defendant issued a notice stating: "We have reviewed your content and found severe or repeated violations of our violent criminal organizations policy." A true and correct copy of this notice is attached as *Exhibit 1*.

18. This statement constitutes an assertion that Plaintiff's content is associated with violent or criminal organizations.

19. This assertion is false.


## C. Content-Level Classification

20. Defendant issued a separate notice regarding specific content within Plaintiff's channel.

21. That notice stated: "We think your content didn't follow our violent criminal organizations policy." The notice referenced specific Sikh devotional performances and named individual performers. A true and correct copy is attached as *Exhibit 2*.

22. This demonstrates that Defendant applied the violent criminal organizations classification to identifiable individuals engaged in lawful religious expression.


## D. Policy Applied

23. Defendant's actions were based on its "Violent Extremist or Criminal Organizations" policy.

24. A true and correct copy of the applicable policy is attached as *Exhibit 3*.

25. Plaintiff's content does not fall within any category defined or contemplated by that policy.


## E. Platform Confirmation of Removal

26. Defendant further confirmed removal through its platform interface, which displayed a notice that Plaintiff's channel had violated the "Violent Criminal Organizations" policy.

27. A true and correct copy of the platform confirmation screen is attached as *Exhibit 4*.


## F. Appeal and Reaffirmation

28. Plaintiff appealed Defendant's determination through Defendant's designated appeal process.

29. Following review, Defendant issued a determination stating: "We reviewed [the content] again and confirmed it's not allowed under our violent criminal organizations policy." A true and correct copy is attached as *Exhibit 5*.

30. Defendant reaffirmed the classification after review. This reaffirmation is likewise false.


## G. Additional Account Impact — Deletion of Video Verification Data

31. Defendant took additional actions affecting Plaintiff's account, including deletion of video verification data and references to the retention of biometric data.

32. A true and correct copy of Defendant's notice regarding these actions is attached as *Exhibit 6*.

## H. Insufficiency of Existing Transparency Frameworks

33. The Foreign Agents Registration Act ("FARA"), 22 U.S.C. § 611 et seq., enacted in 1938, was designed to ensure transparency regarding foreign influence on United States public opinion and policy. A true and correct excerpt of FARA is attached as Exhibit 7.

34. FARA was enacted in a pre-digital era and does not adequately address modern mechanisms of influence, including algorithmic content curation, platform-level content moderation, and large-scale digital information control.

35. Large digital platforms, including Defendant, exercise substantial control over the distribution, visibility, and classification of information within the United States.

36. Upon information and belief, such platforms may be subject to external policy pressures, financial relationships, or influence channels that are not disclosed to users.

37. While Plaintiff does not assert that Defendant is acting as a registered or unregistered foreign agent, the absence of transparency regarding external influence — whether financial, institutional, or policy-based — creates a structural environment in which users cannot meaningfully assess the basis for content classification decisions.

38. Defendant classified Plaintiff's Sikh devotional music as falling under a policy associated with violent criminal organizations, without providing a transparent or comprehensible basis for that determination.

39. This lack of transparency underscores the risk that content moderation decisions may be influenced by undisclosed factors external to the content itself.

40. Defendant represents that its enforcement actions are based on neutral and consistently applied internal policies. Plaintiff relied on those representations.

41. Defendant's failure to disclose the basis of its classification decisions contributed directly to Plaintiff's harm.

42. Public reporting has documented that during the period immediately preceding and concurrent with Plaintiff's channel removal in November 2025, the government of Israel directed approximately $45 million in advertising expenditures through Google and YouTube platforms as part of a broader information and influence initiative totaling approximately $50 million across multiple digital platforms. Plaintiff does not assert that this contract directly caused her channel's removal. Plaintiff does assert that the existence of a substantial foreign government financial relationship with Defendant — undisclosed to users — is precisely the kind of external influence that existing transparency frameworks such as FARA were designed to address, and that the absence of such disclosure prevents users from meaningfully assessing the neutrality of content moderation decisions made during that period.

## J. Algorithmic Cultural Misclassification

43. Defendant's content moderation systems applied classification categories without the cultural literacy necessary to distinguish Sikh devotional music — a tradition practiced by over 25 million people worldwide — from content associated with violent or criminal organizations.

44. Sikh kirtan is a centuries-old tradition of sacred music central to the practice of the Sikh faith. The raag-based classical performances on Plaintiff's channel carry deep religious, historical, and artistic significance that is wholly incompatible with any reasonable interpretation of Defendant's violent criminal organizations policy.

45. Defendant's automated classification systems are designed and trained by individuals who may have no familiarity with South Asian religious traditions, Sikh culture, or the classical musical forms at issue. The result is structural ignorance embedded in the system itself — not mere human error, but institutionalized misreading operating at scale.

46. Unlike a human decision-maker who might recognize and correct a cultural misreading, automated systems replicate errors silently and at scale. Defendant's system did not merely misclassify Plaintiff's content once — it reaffirmed that misclassification upon appeal, demonstrating that the system lacks the capacity to recognize its own cultural ignorance.

47. The pattern Plaintiff experienced — where a system acts with certainty upon a people and a culture it does not understand — reflects a documented and recognized failure mode in automated decision-making. Plaintiff has prepared an essay analyzing this failure pattern, with particular reference to the parallel acknowledged by former U.S. Secretary of Defense Robert S. McNamara regarding the consequences of institutional ignorance. A true and correct copy is attached as Exhibit 8.

48. The consequences of this structural ignorance are not abstract. Plaintiff's channel — a cultural archive of devotional music — was erased. The artists whose performances were recorded suffered misclassification under a label associated with violence and criminality. Reputations were damaged, archives were lost, and an act of cultural preservation was treated as a threat.

## K. Harm to Plaintiff

49. Plaintiff lost approximately two years of work in the creation, curation, and development of her YouTube channel and its content.

50. Plaintiff suffered reputational harm as a direct consequence of being falsely associated with violent or extremist classifications.

51. Plaintiff suffered economic loss, including lost channel value and lost income.

52. Plaintiff's channel included recordings of multiple artists, resulting in broader cultural and artistic harm beyond Plaintiff's individual injury.

## V. CLAIMS FOR RELIEF

### COUNT I — DEFAMATION / FALSE LIGHT

53. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

54. Defendant's classification of Plaintiff's content as associated with violent or criminal organizations constitutes a false statement of fact published to Plaintiff through Defendant's notices, systems, and platform interface. See Restatement (Second) of Torts § 652E (1977) (false light requires: (1) publication; (2) placing plaintiff in a false light; (3) that would be highly offensive to a reasonable person).

55. The classification is false. Plaintiff's channel contained exclusively Sikh devotional music. Defendant's assertion that such content reflects "severe or repeated violations" of a violent criminal organizations policy places Plaintiff and the featured artists in a false light that is highly offensive to any reasonable person.

56. The classification harmed Plaintiff's reputation by falsely associating her and the named artists on her channel with violent extremism and criminal conduct. Under Texas law, false light is an actionable invasion of privacy tort. See Braun v. Flynt, 726 F.2d 245 (5th Cir. 1984) (recognizing false light claim based on overall false impression created, not merely technically false statements); Time, Inc. v. Hill, 385 U.S. 374 (1967).

57. Defendant acted negligently or recklessly in making and reaffirming this classification without an adequate factual basis, applying the same false designation even after Plaintiff's appeal placed Defendant on direct notice of the error.

### COUNT II — BREACH OF CONTRACT

58. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

59. Plaintiff entered into a contractual relationship with Defendant by agreeing to YouTube's Terms of Service and Community Guidelines. These agreements constitute enforceable contracts under applicable law.

60. Defendant's Terms of Service and Community Guidelines constitute binding obligations upon Defendant, including the obligation to enforce its policies fairly, consistently, and in good faith. The implied covenant of good faith and fair dealing inheres in every contract under Texas law. See Tex. Bus. & Com. Code § 1.304; Centrix Fin., LLC v. National Western Life Ins. Co., 220 S.W.3d 64 (Tex. App. 2006).

61. Defendant breached these obligations by applying its violent criminal organizations policy to content that does not fall within that policy's scope, by any reasonable or informed interpretation of that policy's terms.

62. Defendant further breached by failing to apply its policies fairly and in good faith, and by arbitrarily removing Plaintiff's channel — the termination of an ongoing contractual relationship — on the basis of a false classification. See 42 U.S.C. § 1981(b) (defining the

right to make and enforce contracts to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship").

63. Plaintiff suffered substantial damages as a direct result of this breach, including loss of approximately two years of content development, loss of channel value, and reputational harm.

## COUNT III — VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT

64. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

65. Plaintiff is a "consumer" within the meaning of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code §§ 17.41–17.63, having sought and acquired services from Defendant — specifically, the use of Defendant's YouTube platform for the hosting, distribution, and publication of cultural and artistic content. See Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535, 539 (Tex. 1981) (establishing three-element test for DTPA claim: (1) plaintiff is a consumer; (2) defendant engaged in prohibited conduct; (3) prohibited conduct was a producing cause of damages).

66. Defendant represented to users, including Plaintiff, that its platform is governed by consistent, neutral, and transparent content standards, applied uniformly and in accordance with its published policies. These representations were material to Plaintiff's decision to invest substantial time and resources in building her channel on Defendant's platform.

67. Defendant's classification of Plaintiff's devotional music as "violent criminal organizations" content constitutes a false, misleading, and deceptive act or practice within the meaning of Tex. Bus. & Com. Code § 17.46(b), including without limitation: misrepresenting the characteristics of its services (§ 17.46(b)(5)); representing that its services conform to particular standards when they do not (§ 17.46(b)(7)); and failing to disclose information known to Defendant that was intended to induce Plaintiff's continued use of the platform (§ 17.46(b)(24)).

68. Defendant's actions were inconsistent with its representations and constitute an unconscionable course of action within the meaning of Tex. Bus. & Com. Code § 17.50(a)(3), in that Defendant — a corporation exercising massive information and distribution power — took advantage of Plaintiff's inability as a consumer to independently assess or challenge an opaque automated classification system.

69. Plaintiff relied on Defendant's representations to her detriment, and suffered economic damages and mental anguish as a producing cause of Defendant's deceptive conduct. See Tex. Bus. & Com. Code § 17.50(a)(1).

70. Pursuant to Tex. Bus. & Com. Code § 17.505(a), Plaintiff hereby provides written notice to Defendant of this DTPA claim, specifying her complaint and damages as set forth in this Complaint. Plaintiff asserts this Count subject to the 60-day notice period prescribed by §

17.505(a), and requests that the Court, if necessary, abate this Count pending expiration of that period rather than dismiss it.

## COUNT IV — RELIGIOUS AND ETHNIC PROFILING
(42 U.S.C. § 1981; 42 U.S.C. § 2000a; Tex. Civ. Prac. & Rem. Code § 106.001)

71. Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.

72. All artists featured on Plaintiff's YouTube channel are Sikh men who present visibly and unmistakably as members of the Sikh faith — wearing dastar (turbans) and uncut beards (kesh) in accordance with the articles of Sikh faith. These visible religious markers are among the most recognizable in the world and are entirely distinct from any association with violence or criminal conduct.

73. Among the artists specifically named in Defendant's content classification notices (Exhibit 2) are Bhai Satwant Singh Ji and Bhai Naresh Singh Ji, performing at the Sikh Cultural Center in Davenport, Iowa — named, identifiable individuals engaged in documented religious practice at an established institution.

74. Every video on Plaintiff's channel featured thumbnails prominently displaying artists in full Sikh religious dress — turban and beard visibly prominent. The content of the performances was classical raag-based kirtan: devotional music with no lyrical or visual content associated with violence, extremism, or criminal activity.

75. Upon information and belief, Defendant's automated content moderation systems flagged Plaintiff's content based in whole or in part on the visual appearance of the artists — specifically, the turbans and beards that identify them as Sikh — and misclassified that appearance as a marker associated with violent or criminal organizations.

76. This misidentification conflates the visible markers of the Sikh faith with stereotypes associated with Muslim extremism — a distinct and compounded error reflecting both religious ignorance and racial profiling. Sikhs are not Muslim. The turban and beard of a Sikh man are sacred religious articles, not indicators of extremism under any reasonable or informed standard.

77. The conduct described constitutes discrimination against an identifiable class of persons on the basis of their ancestry and ethnic characteristics, actionable under 42 U.S.C. § 1981. See St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) (Section 1981 protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"). Plaintiff's contractual relationship with Defendant — including the making, performance, and termination of her YouTube Terms of Service agreement — was impaired on the basis of the ethnic and religious appearance of the individuals featured in her content. See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media, 140 S. Ct. 1009 (2020) (but-for causation required under § 1981).

78. The conduct further constitutes discrimination in a place of public accommodation within the meaning of 42 U.S.C. § 2000a, to the extent Defendant's YouTube platform constitutes a place of public accommodation, and within the meaning of Tex. Civ. Prac. & Rem. Code § 106.001, which prohibits discrimination by business establishments on the basis of race, color, disability, religion, national origin, or ancestry.

79. Defendant's system did not merely misclassify content. It misclassified named, identifiable people — based on who they visibly are rather than what they said or did. That is profiling, and it caused concrete, documented harm.

80. As a result of this profiling, Plaintiff and the artists featured on her channel suffered reputational harm, false association with violence and criminality, and the erasure of a cultural and religious archive representing years of devotional work.

## VI. DAMAGES

81. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered the following damages:

   (a) $50,000 for loss of labor and content development;

   (b) $75,000 for loss of channel value;

   (c) $50,000 for loss associated with artistic recordings and cultural works;

   (d) $150,000 for reputational harm.

82. Total damages exceed $325,000, exclusive of interest, costs, and any additional relief the Court may award.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Narveen Singh Aryaputri respectfully requests that this Court:

   (a) Enter judgment in Plaintiff's favor on all counts;

   (b) Award Plaintiff compensatory damages in an amount to be determined at trial, but not less than $325,000;

   (c) Award Plaintiff such additional relief, including injunctive or declaratory relief, as the Court deems appropriate;

   (d) Award Plaintiff costs of suit; and

   (e) Grant such further relief as the Court deems just and proper.

## VIII. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.


Respectfully submitted,


**Narveen Singh Aryaputri**

Plaintiff, Pro Se

1440 Hotz Road

Cuero, Texas 77954

(312) 498-7207

NarveenAryaputri@gmail.com


Dated: April 3rd 2026.


---


## EXHIBIT LIST


Exhibit 1 — YouTube Notice of Channel Removal (November 5, 2025)

Exhibit 2 — YouTube Content Review and Policy Violation Determination

Exhibit 3 — YouTube Policy: Violent Criminal Organizations

Exhibit 4 — Platform Confirmation Screen of Channel Removal

Exhibit 5 — YouTube Appeal Determination Confirming Policy Violation

Exhibit 6 — YouTube Notice: Deletion of Video Verification Data

Exhibit 7 — Excerpt, Foreign Agents Registration Act, 22 U.S.C. § 611 et seq.

Exhibit 8 — Essay: "Robert McNamara, Culture and When Systems Decide Without Knowing"